1   Michael Rapkine (#222811)
        mrapkine@afrct.com
2   ANGLIN, FLEWELLING, RASMUSSEN,
        CAMPBELL & TRYTTEN LLP
3   199 South Los Robles Avenue, Suite 600
    Pasadena, California 91101-2459
4   Tel: (626) 535-1900 | Fax: (626) 577-7764

5   Attorneys for Defendant
    WELLS FARGO BANK, N.A.
6   ("Wells Fargo")

7

8                   UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

10

11  INGA O. STILES,                    CASE NO.: 4:14-CV-04169-DMR

12              Plaintiff,             [Assigned to the Hon. Donna M. Ryu]

13      v.                             **DEFENDANT WELLS FARGO'S NOTICE
                                       OF MOTION AND MOTION TO DISMISS
14  WELLS FARGO BANK, N.A. and DOES 1 - THE COMPLAINT; MEMORANDUM OF
    50,                                POINTS AND AUTHORITIES**
15
                Defendants.            [Filed Concurrently with Request for Judicial
16                                     Notice]

17

18                                     Date:      December 11, 2014
                                       Time:      11:00 a.m.
19                                     Ctrm:      4 (3rd Floor)

20

21  TO PLAINTIFF AND HER COUNSEL OF RECORD:

22          PLEASE TAKE NOTICE that on December 11, 2014 at 11:00 a.m. in courtroom 4 of the

23  above-entitled Court, located at 1301 Clay Street, Oakland, California, the Honorable Donna M.

24  Ryu presiding, defendant Wells Fargo Bank, N.A. ("Wells Fargo") will move to dismiss all six

25  claims in the complaint, pursuant to FRCP 12(b)(6).

26  / / /

27  / / /

28  / / /

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

Grounds for the 12(b)(6) motion are as follows:

**1.  First Claim: Fraud**

Plaintiff fails to state a fraud claim because:  (i) the fraud allegations relating to origination of the subject loan are preempted by the Home Owners' Loan Act; (ii) allegations relating to the 2007 loan closing are also fatally time-barred; (iii) plaintiff does not allege fraud with the required specificity; (iv) plaintiff has not adequately alleged the element of scienter; (v) the pleadings fail to sufficiently allege "justifiable reliance" or resulting damages; and (vi) the fraud claim fails as a matter of law, because a bank has no obligation to place a borrower in an "affordable" loan.

**2.  Second Claim: Negligence**

Plaintiff fails to state a claim for negligence because:  (i) the allegations relating to loan origination are preempted by the Home Owners' Loan Act; (ii) allegations relating to loan closing are likewise time-barred; (iii) plaintiff cannot allege causation or resulting damages; and (iv) this claim fails as a matter of law, for a conventional lender does not owe a duty of care to its borrowers.

**3.  Third Claim: Elder Abuse**

Plaintiff fails to state a claim for elder abuse because:  (i) the allegations relating to loan origination are preempted by the Home Owners' Loan act; (ii) allegations relating to loan closing are likewise time-barred; (iii) the mere extension of a loan does not give rise to an elder abuse claim; and (iv) the allegations relating to the recent non-judicial foreclosure process are not a legitimate basis for an elder abuse claim.

**4.  Fourth Claim: "Wrongful Foreclosure" (Violation of Civil Code § 2923.5, aka the Perata Mortgage Relief Act)**

Plaintiff fails to state a claim for violation of the Perata Mortgage Relief Act (Civil Code § 2923.5) because: (i) plaintiff's conclusory allegations are insufficient to overcome the declaration of compliance attached to the recorded notice of default; (ii) it is unclear whether the subject property is "owner-occupied", as required by Civil Code § 2923.5(i); and (iii) plaintiff's clear inability to tender even a portion of her debt vitiates this wrongful foreclosure claim.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1

5.     **Fifth Claim: "Violation of Civil Code §§ 2923.5 and 2923.6"**

Plaintiff fails to state a claim for alleged violation of Civil Code § 2923.6 ("dual tracking") because:  (i) there is no allegation that a "complete" loan modification application was ever submitted to Wells Fargo; (ii) the complaint concedes that plaintiff received a loan modification denial letter and therefore no modification review was "pending" when the notice of trustee's sale was subsequently recorded; and (iii) the muddled pleadings otherwise fail to state a claim under the California Homeowners' Bill of Rights.

6.     **Sixth Claim: Violation of Bus. & Prof. Code § 17200, _et seq._**

Plaintiff fails to state a UCL claim because:  (i) any allegations relating to the loan closing are preempted by HOLA; (ii) allegations relating to loan closing are likewise time-barred; (iii) the UCL claim is entirely derivative in nature, predicated on prior causes of action which are defective; (iv) plaintiff does not plead this claim with particularity; (v) plaintiff lacks standing to bring a UCL claim; and (vi) plaintiff's lack of tender vitiates this claim.

The motion to dismiss is based upon this notice, the memorandum of points and authorities, the complaint, the accompanying request for judicial notice, and on Wells Fargo's argument at the hearing.


Respectfully submitted,

Dated:  October 1, 2014

ANGLIN, FLEWELLING, RASMUSSEN,
CAMPBELL & TRYTTEN LLP


By:   /s/ Michael Rapkine
Michael Rapkine
mrapkine@afrct.com
Attorneys for Defendant
WELLS FARGO BANK, N.A

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

1.   INTRODUCTION .............................................................................................................. 1

2.   SUMMARY OF THE COMPLAINT AND JUDICIALLY NOTICEABLE
     DOCUMENTS ................................................................................................................... 2

3.   THE LOAN-ORIGINATION CLAIMS ARE IRRETRIEVABLY TIME-
     BARRED ........................................................................................................................... 3

4.   PLAINTIFF'S LOAN-ORIGINATION CLAIMS ARE PREEMPTED BY
     THE HOME OWNERS' LOAN ACT ("HOLA") ............................................................ 6

     A.   As A Federally-Chartered Savings Bank, World Savings Operated
          Under HOLA ............................................................................................................ 6

     B.   Regulations Promulgated By The OTS Preempt Any State Law That
          Affects The Operation Of A Federal Savings Association .................................... 6

     C.   State Laws Preempted by HOLA .......................................................................... 7

     D.   The Application of HOLA Preempts State Law Claims That
          Challenge The Propriety Of The Loan Closing .................................................... 8

5.   PLAINTIFF'S CLEAR INABILITY TO TENDER EVEN A PORTION OF
     HER CONSIDERABLE DEBT IS A DEATH KNELL TO THIS ACTION ............... 10

6.   THE FRAUD CLAIM IS PLAGUED BY ADDITIONAL
     SHORTCOMINGS ......................................................................................................... 11

     A.   Plaintiff Fails To Plead The Elements Of Fraud With The Required
          Specificity ............................................................................................................. 11

     B.   The "Fraud By Concealment" Allegations Fail As A Matter Of Law ............... 12

     C.   Plaintiff Cannot Plead "Justifiable Reliance" Or Resulting Damages .............. 13

7.   THE NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW ............................... 14

8.   THE ELDER ABUSE CLAIM IS LIKEWISE DEFECTIVE ...................................... 15

9.   PLAINTIFF SHOULD NOT BE ALLOWED TO PROSECUTE HER
     CAUSES OF ACTION WHICH ALLEGE A VIOLATION OF CIVIL
     CODE §§ 2923.5 AND 2924 .......................................................................................... 17

     A.   Wells Fargo Did Not Violate The Perata Mortgage Relief Act ....................... 17

     B.   Plaintiff's Allegations Under The HBOR Are Likewise Defective ................... 18

10.  AS WITH THE REST OF THE COMPLAINT, THE UNFAIR
     COMPETITION CLAIM IS RIDDLED WITH DEFECTS .......................................... 20

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

A.   The Unfair Competition Allegations Are Conclusory And Meritless ................ 20

B.   Plaintiff Lacks Standing To Assert An Unfair Competition Claim .................... 21

C.   Plaintiff's Inability To Tender Her Debt Bars The UCL Claim ......................... 21

11.   CONCLUSION ................................................................................................................ 22

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

CASE NO.: 4:14-CV-04169-DMR
TABLE OF CONTENTS

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Alicea v. GE Money Bank,*
    2009 U.S. Dist. LEXIS 60813, *7-8 (N.D. Cal. July 16, 2009) .........................................10

*American Banker Association v. Lockyear,*
    239 F. Supp. 2d 1000 (E.D. Cal. 2002)....................................................................................6

*Anaya v. Advisors Lending Group,*
    2009 U.S. Dist. LEXIS 68373, *27 (E.D. Cal. Aug. 3, 2009) ............................................11

*Andrade v. Wachovia Mortg., FSB,*
    2009 U.S. Dist. LEXIS 34872, *8 (S.D. Cal. Apr. 21, 2009)................................................9

*Baldwin County Welcome Ctr. v. Brown,*
    466 U.S. 147 (1984).................................................................................................................5

*Bank of America v. The City & County of San Francisco,*
    309 F.3d 551 (9th Cir. 2002) ...............................................................................................6, 7

*California Sansome Co. v. U.S. Gypsum,*
    55 F.3d 1402 (9th Cir. 1995) ..................................................................................................5

*Camacho v. Wachovia Mortgage, FSB,*
    2009 U.S. Dist. LEXIS 102243, *12 (S.D. Cal. Nov. 3, 2009) ............................................9

*Cosio v. Simental,*
    2009 U.S. Dist. LEXIS 8385, *13-15 (C.D. Cal. Jan. 27, 2009).........................................9

*Das v. WMC Mortg. Corp.,*
    831 F. Supp. 2d 1147 (N.D. Cal. 2011) ...............................................................................13

*DeLeon v. Wells Fargo Bank, N.A.,*
    2011 U.S. Dist. LEXIS 8296, *21 (N.D. Cal. Jan. 28, 2011).............................................21

*DeLeon v. Wells Fargo Bank, N.A.,*
    729 F. Supp. 2d 1119 (N.D. Cal. June 9, 2010).....................................................................7

*Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,*
    458 U.S. 141 (1982).................................................................................................................7

*Garcia v. Wachovia Mortg. Corp.,*
    676 F. Supp. 2d 895 (C.D. Cal. 2009) ....................................................................................9

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.,*
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) ...............................................................................11

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Glendale Fed. Sav. & Loan Ass'n v. Fox*,
  459 F. Supp. 903 (C.D. Cal. 1978) ..................................................................................7

*Gomez v. Wachovia Mortg. Corp.*,
  2010 U.S. Dist. LEXIS 3799, *7-8 (N.D. Cal. Jan. 15, 2010)................................9

*Gonzales v. Wells Fargo Bank, N.A.*,
  2012 U.S. Dist. LEXIS 154851, *20 (N.D. Cal. Oct. 29, 2012)..........................15

*Guerrero v. Wells Fargo Bank, N.A.*,
  2010 U.S. Dist. LEXIS 96261 (C.D. Cal. Sept. 14, 2010)......................................7

*Juarez v. Wells Fargo Bank, N.A.*,
  2009 U.S. Dist. LEXIS 110892, *2 (C.D. Cal. Nov. 11, 2009).............................17

*Kamp v. Aurora Loan Services*,
  2009 U.S. Dist. LEXIS 95245, *6 (C.D. Cal. Oct. 1, 2009)..................................17

*Khan v. ReconTrust Co.*,
  2012 U.S. Dist. LEXIS 91589, *18-22 (N.D. Cal. July 2, 2012) .........................18

*Kurek v. America's Wholesale Lender*,
  2011 U.S. Dist. LEXIS 82669, *9-10 (N.D. Cal. July 28, 2011) ........................13

*Lawrence v. Aurora Loan Servs. LLC*,
  2010 U.S. Dist. LEXIS 5373, *22, 25-26 (E.D. Cal. Jan. 25, 2010) ...................15

*Leisher v. Wachovia Mortg., Inc.*,
  2011 U.S. Dist. LEXIS 3037, *16-17 (S.D. Cal. Jan. 12, 2011) ...................12, 13

*McGill v. Wachovia Mortg., FSB Loan*,
  2010 U.S. Dist. LEXIS 43393, *33-34 (E.D. Cal. Mar. 3, 2010) .........................16

*Montoya v. Countrywide Bank*,
  2009 U.S. Dist. LEXIS 53920, *32 (N.D. Cal. June 25, 2009)......................10, 18

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ..............................................................................12

*Neu v. Terminix Int'l, Inc.*,
  2008 U.S. Dist. LEXIS 32844, *13-14 (N.D. Cal. Apr. 8, 2008).........................20

*Nevis v. Wells Fargo Bank*,
  2007 U.S. Dist. LEXIS 65932, *10-11 (N.D. Cal. Sept. 6, 2007)........................16

*Ogilvie v. Select Portfolio Servicing*,
  2012 U.S. Dist. LEXIS 147493, *24-25 (N.D. Cal. Oct. 12, 2012) .....................20

*Platt Elec. Supply Inc. v. EOFF Elec., Inc.*,
  522 F.3d 1049 (9th Cir. 2008) ...............................................................................5

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Settle v. World Savings Bank, FSB,*
   2012 U.S. Dist. LEXIS 4215, *24 (C.D. Cal. Jan. 11, 2012) ............................................15

*Silvas v. E*Trade Mortgage Corp.,*
   514 F.3d 1001 (9th Cir. 2008) ..........................................................................................7, 8

*Stefan v. Wachovia, World Savings,*
   2009 U.S. Dist. LEXIS 113480, *8-9 (N.D. Cal. Dec. 7, 2009)...........................................9

*Wool v. Tandem Computers, Inc.,*
   818 F.2d 1433 (9th Cir. 1987) ...........................................................................................12

*Zlotnik v. U.S. Bancorp, et al.,*
   2009 U.S. Dist. LEXIS 119857, *17-26 (N.D. Cal. Dec. 22, 2009)......................................7

**STATE CASES**

*Abdallah v. United Savings Bank,*
   43 Cal. App. 4th 1101 (1996) .......................................................................................10, 18

*Cadlo v. Owens-Illinois, Inc.,*
   125 Cal. App. 4th 513 (2004) .............................................................................................13

*Conrad v. Bank of America,*
   45 Cal. App. 4th 133 (1996) ..............................................................................................13

*Daro v. Superior Court,*
   151 Cal. App. 4th 1079 (2007) ...........................................................................................21

*Das v. Bank of America, N.A.,*
   186 Cal. App. 4th 727 (2010) .............................................................................................16

*FCPI v. E&G Investments, Ltd.,*
   207 Cal. App. 3d 1018 (1989) ............................................................................................11

*Fields v. Napa Milling Co.,*
   164 Cal. App. 2d 442 (1958) ..............................................................................................13

*Gavina v. Smith,*
   25 Cal. 2d 501 (1944) .........................................................................................................10

*Hahn v. Mirda,*
   147 Cal. App. 4th 740 (2007) .............................................................................................12

*Hall v. Time, Inc.,*
   158 Cal. App. 4th 847 (2008) .............................................................................................21

*Kasky v. Nike, Inc.,*
   27 Cal. 4th 939 (2002) ........................................................................................................21

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

*Khoury v. Maly's of California, Inc.*,
    14 Cal. App. 4th 612 (1993) ........................................................................20

*Korea Supply Company v. Lockheed Martin Corporation*,
    29 Cal. 4th 1134 (2003) .......................................................................20, 21

*Lueras v. BAC Home Loans Servicing, LP*,
    221 Cal. App. 4th 49 (2013) ...............................................................14, 15

*McAllister v. Clement*,
    75 Cal. 182 (1888) ...................................................................................14

*Meetz v. Mohr*,
    141 Cal. 667 (1904) .................................................................................10

*Nymark v. Hart Federal Savings & Loan Ass'n*,
    231 Cal. App. 3d 1089 (1991) ...............................................................14

*Parson v. Tickner*,
    31 Cal. App. 4th 1513 (1995) ...................................................................5

*Perlas v. GMAC Mortgage, LLC*,
    2010 Cal. App. LEXIS 1411, *10-14 (2010) ........................................13

*Sipe v. McKenna*,
    88 Cal. App. 2d 1001 (1948) ..................................................................10

*Touli v. Santa Cruz County Title Co.*,
    20 Cal. App. 2d 495 (1937) ....................................................................10

*Wagner v. Benson*,
    101 Cal. App. 3d 27 (1980) ....................................................................15

*Weiss v. Washington Mutual Bank*,
    147 Cal. App. 4th 72 (2007) ..................................................................8, 9

*White v. Ultramar*,
    21 Cal. 4th 563 (1999) .............................................................................16

**FEDERAL STATUTES**

12 U.S.C. § 1461, *et seq* ...................................................................................6

12 U.S.C. § 1464(a) ..........................................................................................7

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200, *et seq.* ..........................................................3

Cal. Bus. & Prof. Code § 17204 .......................................................................21

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Cal. Civ. Code § 2923.4 ..................................................................................... 19

Cal. Civ. Code § 2923.5 ..................................................................................... 17

Cal. Civ. Code § 2923.5(i) ............................................................................. 17, 18

Cal. Civ. Code §§ 2923.5 and 2923.6 ................................................................. 3

Cal. Civ. Code §§ 2923.5 and 2924 ............................................................... 17, 18

Cal. Civ. Code § 2923.6 ..................................................................................... 18

Cal. Civ. Code § 2923.6(c) ................................................................................ 18

Cal. Civ. Code § 2923.55(b)(2) .......................................................................... 17

Cal. Civ. Code § 2924, *et seq.* ........................................................................... 17

Cal. Civ. Code § 2924.12(a) .............................................................................. 19

Cal. Civ. Code § 3294 ........................................................................................ 16

Cal. Civ. Proc. Code § 338(d) ............................................................................. 4

Cal. Civ. Proc. Code § 339 .................................................................................. 4

Cal. Welf. & Inst. Code § 15610.30 ..................................................................... 4

Cal. Welf. & Inst. Code § 15610.30(a) ............................................................... 15

Cal. Welf. & Inst. Code § 15610.70 ................................................................... 16

Cal. Welf. & Inst. Code § 15657(c) .................................................................... 16

Cal. Welf. & Inst. Code §§ 15657.5 and 15657.6 ................................................. 4

Cal. Welf. & Inst. Code § 15657.7 ....................................................................... 4

**RULES**

Fed. R. Civ. P. 9 ................................................................................................ 20

Fed. R. Civ. P. 9(b) ...................................................................................... 11, 12

**REGULATIONS**

12 C.F.R. § 545.2 ............................................................................................... 7

12 C.F.R. § 560 .................................................................................................. 6

12 C.F.R. § 560.2(a) ........................................................................................... 7

12 C.F.R. § 560.2(b) ................................................................................7, 8, 9

12 C.F.R. § 560.2(b)(4)................................................................................8, 10

12 C.F.R. §§ 560.2(b)(4) and (9) ...................................................................9

12 C.F.R. §§ 560.2(b)(4), (9) and (10)...........................................................10

12 C.F.R. § 560.2(b)(9) ................................................................................8

12 C.F.R. § 560.2(b)(10)................................................................................8, 9

**OTHER AUTHORITIES**

5 Witkin, *California Procedure*, Pleading § 929 (5th ed. 2008) .................................5

9 Witkin, *Summary of California Law*, Corporations § 198 (10th ed. 2005) ..............................7

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   MEMORANDUM OF POINTS AND AUTHORITIES

2   ## 1.   INTRODUCTION

3       This action arises from a home loan that plaintiff obtained from Wells Fargo's

4   predecessor in 2007, and plaintiff's most recent default on the mortgage in June 2013.  In an

5   attempt to challenge the non-judicial foreclosure, plaintiff asserts that had her lender "used a

6   more determinative level of scrutiny, [she] would not have [sic] qualified for the loan in the first

7   place." (Comp. ¶ 32; see also, ¶¶ 5, 31, 34-35, 57-62).  Plaintiff also maintains that the current

8   foreclosure process is flawed because Wells Fargo failed to contact her before recording the

9   notice of default, to discuss the delinquency and foreclosure alternatives.  It is further alleged

10  that Wells Fargo has engaged in "dual tracking" in violation of the Homeowners' Bill of Rights

11  (the "HBOR") and has refused to negotiate a loan modification "in good faith."

12      For a myriad of reasons, plaintiff has not pled a viable claim against Wells Fargo.

13  Among other things, the loan origination-based claims are fatally time-barred.  Equally

14  important, these claims fail as a matter of law, for a lender has no duty to place its borrower in an

15  affordable mortgage.  Finally, the origination-based claims are preempted by the Home Owners'

16  Loan Act ("HOLA"), because plaintiff seeks to supplant the regulator and challenge the lending

17  activities of a federal savings bank.

18      As for the attack on Wells Fargo's loan servicing activities, plaintiff's allegations are

19  eviscerated by concessions elsewhere in the pleadings and fail due to plaintiff's admitted

20  inability to tender ever a portion of her considerable debt.  As detailed below, Wells Fargo's

21  motion to dismiss should therefore be granted as to each claim without leave to amend.

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

## 2.   SUMMARY OF THE COMPLAINT AND JUDICIALLY NOTICEABLE DOCUMENTS

On or around December 3, 2007, plaintiff obtained a $975,000 refinance loan from Wells Fargo's predecessor, World Savings Bank, FSB.[1]  (Comp. ¶ 30).  The terms of the loan were memorialized in an adjustable rate promissory note and secured by a deed of trust against 17 Chapel Drive, Lafayette, California. (Comp. ¶¶ 7, 30-31).  True and correct copies of the deed of trust and promissory note signed by plaintiff are attached to the accompanying Request for Judicial Notice ("RJN") as Exhibits F and G.

According to plaintiff, the terms of this home loan "were not clear or conspicuous . . . violating several statutes and in essence creating an illegal loan." (Comp. ¶ 31).  Plaintiff adds that the "mortgage was underwritten without proper due diligence by World Savings." *Id*.  The complaint stresses that plaintiff's actual income was approximately $1,159 per month at the time of loan origination, and "[h]ad World Savings used a more determinative level of scrutiny, Plaintiff would not have been qualified for the loan in the first place." (Comp. ¶ 32).

In February 2008, plaintiff's domestic partner passed away, leaving behind "no assets or income sources to assist plaintiff in repaying the loan." (Comp. ¶ 36).  Plaintiff struggled to make the minimum mortgage payment, relying upon financial assistance from her daughter and rental income from a boarder. (Comp. ¶ 37).

In late 2009, plaintiff defaulted on the subject loan, and a notice of default was recorded with Contra Costa County on March 18, 2010. (RJN, Exh. H).  As reflected in this first notice of default, plaintiff's arrearage stood at $23,042.67 at the time.  (RJN, Exh. H at p.1).

On July 8, 2010, plaintiff filed a prior action against Wells Fargo in Contra Costa Superior Court, Case No. CIVMSC10-02025. (RJN, Exh. I ("Prior Complaint")).  Plaintiff

---

[1]    World Savings Bank, FSB changed its name to "Wachovia Mortgage, FSB" and later merged into Wells Fargo Bank, N.A.  Attached to the accompanying Request for Judicial Notice ("RJN") as Exhibits A through E are documents issued by the Office of Thrift Supervision, the Office of the Comptroller of the Currency, and the FDIC that evidence this name change and subsequent merger.  Plaintiff acknowledges this corporate transition in the pleadings. (e.g., Comp. ¶¶ 12, 23).  For purposes of this motion, World Savings will be referred to as "Wells Fargo."

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

dismissed this action without prejudice on September 29, 2010. (RJN, Exh. J (Docket)).

In September 2012, plaintiff's daughter was killed in an automobile accident, leading to a wrongful death action over a life insurance policy. (Comp. ¶¶ 38-39).  Although not articulated in the pleadings, it is likely that plaintiff used the life insurance proceeds to cure her delinquency on the subject mortgage.

In mid-2013, plaintiff's tenants moved out of the property. (Comp. ¶ 39). Plaintiff stresses that due to this development, "[she] missed her June 2013 payment and has not made any payments since." (Comp. ¶ 39).[2]

After continued non-payment, another notice of default was recorded on October 22, 2013. (RJN, Exh. K; see also, Comp. ¶ 42).  At the time, plaintiff's arrearage stood at $27,631.17. (RJN, Exh. K at p.1).

Plaintiff contends that the most recent notice of default is invalid, on the basis that she was not "contacted by anyone at WELLS FARGO prior to August 27, 2013 to discuss potential loan workout options." (Comp. ¶ 40).  It is further alleged that the foreclosure mechanics are flawed because plaintiff was not afforded a proper appeals process following the denial of her loan modification application, and that Wells Fargo has refused to perform a "good faith" modification review. (Comp. ¶¶ 43-55).

On August 22, 2014, a notice of trustee's sale was recorded with respect to the subject property. (RJN, Exh. L).  Plaintiff now brings a second lawsuit, asserting six claims against Wells Fargo:  (1) fraud; (2) negligence; (3) elder abuse; (4) wrongful foreclosure; (5) violation of Civil Code §§ 2923.5 and 2923.6; and (6) violation of Business & Professions Code § 17200, *et seq*.  As briefed below, not a single claim has merit.

**3.    THE LOAN-ORIGINATION CLAIMS ARE IRRETRIEVABLY TIME-BARRED**

Based on the date of the promissory note and deed of trust, plaintiff's loan closed on or around December 3, 2007. (RJN, Exhs. F and G)  However, plaintiff did not file this lawsuit

---

[2]    This is corroborated on page two of the recorded notice of default, in which it states that plaintiff has: "Fail[ed] to pay the monthly payment due June 1, 2013 of principal, interest and impounds, and subsequent installments due thereafter. . ." (RJN, Exh. K at p.2).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    until nearly seven (7) years later on September 4, 2014.  For the reasons articulated below, any

2    allegations that relate to the origination of this loan are fatally time-barred.

3        (a).  First Claim (Fraud):  Plaintiff's first cause of action incorporates the prior allegations

4    by reference (Comp. ¶ 57) and stresses that this conduct constitutes fraud. (Comp. ¶ 58).  To the

5    extent that that plaintiff alleges fraud in connection with the loan closing, these allegations are

6    barred by the three-year statute of limitations set forth in C.C.P. § 338(d).  For example, it is

7    alleged in the "general allegations" portion of the complaint that Wells Fargo's predecessor

8    committed fraud by concealment, by offering plaintiff an "exotic" adjustable rate mortgage with

9    terms that "were not clear or conspicuous." (e.g., Comp. ¶ 31; see also, ¶¶ 5, 59).  It is further

10   alleged that plaintiff was placed in an unaffordable loan product, which her lender "knew or

11   should have known would never be able to be fully paid back by Plaintiff." (Comp. ¶ 34; see

12   also, ¶¶ 32-33, 60, 68).

13       (b).  Second Claim (Negligence):  As with the fraud cause of action, the negligence claim

14   incorporates the "general allegations" section by reference and appears to be a blend of loan

15   origination and wrongful foreclosure allegations. (Comp. ¶¶ 74-82).  To the extent that plaintiff

16   contends that her lender was negligent in placing her in an ill-suited loan product, this claim falls

17   prey to the two-year time bar of C.C.P. § 339.

18       (c).  Third Claim (Elder Abuse):  In the third cause of action, plaintiff stresses that she is

19   a senior citizen and that her lender originated the mortgage without regard for her "ability to

20   repay the loan, in conscious disregard of [its] duties to Plaintiff as well as to the American

21   economy in general." (Comp. ¶¶ 84, 86).  At the very latest, this elder abuse claim ran four (4)

22   years after loan closing – i.e., in December 2011.  After all, a cause of action for elder abuse

23   based on financial abuse is four (4) years. "An action for damages pursuant Sections 15657.5 and

24   15657.6 for financial abuse of an elder or dependent adult, as defined in Section 15610.30, shall

25   be commenced within (4) four years after the plaintiff discovers or, through the exercise of

26   reasonable diligence, should have discovered, the facts constituting the financial abuse."  Welf.

27   & Inst. Code § 15657.7.

28       It should be added that plaintiff is incapable of presenting an equitable tolling theory in

an attempt to resurrect these origination-based allegations.  A plaintiff relying on delayed

discovery must allege specific *facts* establishing that:  (1) she had no knowledge of the injury;

(2) she *lacked the means* for obtaining such knowledge; and (3) how and when she actually

learned of the injury.  *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir.

1995); *Parson v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995).  "Formal averments or general

conclusions to the effect that the facts were not discovered until a stated date, and that the

plaintiff could not reasonably have made an earlier discovery, are useless."  5 Witkin, California

Procedure, *Pleading* § 929 (5th ed. 2008).

    Here, plaintiff was on inquiry notice of any alleged misrepresentations upon closing.  For

example, the final loan terms were memorialized in adjustable rate promissory note signed by

plaintiff in December 2007. (RJN, Exh. G)  Plaintiff had every opportunity to thoroughly review

the loan terms; an argument that Wells Fargo did not explain the financial *consequences* of the

loan does not trigger equitable tolling.  *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147,

151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that

lack of diligence"); *Platt Elec. Supply Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1058 (9th Cir.

2008) (a cause of action for fraud accrues when plaintiff has inquiry notice).

    Put another way, plaintiff cannot offer an argument that she lacked the means to either

examine the terms in the loan documents, or to immediately consult a more knowledgeable party.

Among other things, the promissory note and deed of trust contain conspicuous sections

regarding the adjustable interest rate, the initial payment amount, and the date on which the

payments changed. (RJN, Exhs. F and G)  Instead of exercising a modicum of due diligence,

plaintiff waited nearly seven years to raise what she now claims are discrepancies between

alleged promises and the actual mortgage terms.

    Moreover, as explained in Section 6 of this motion, a bank does not have an obligation to

place a borrower in an affordable loan product or advise them that they could potentially obtain a

better mortgage elsewhere.  In the present case, Wells Fargo did not make a misrepresentation or

conceal any of the loan features – the complaint simply states that a bank should be liable for

loaning a borrower too much money. (e.g., Comp. ¶¶ 32-35).  Yet case law is abundantly clear

1  that in a free market, it is incumbent upon the customer to determine what they can afford and to

2  assume that a business will promote its own products.

3      In light of the foregoing, creative amended pleading cannot excuse plaintiff's long delay

4  and salvage the time-barred claims.

5      **4.    PLAINTIFF'S LOAN-ORIGINATION CLAIMS ARE PREEMPTED BY THE**

6      **HOME OWNERS' LOAN ACT ("HOLA")**

7  **A.    As A Federally-Chartered Savings Bank, World Savings Operated Under HOLA**

8      In addition to a fatal time-bar, each claim that relates to the 2007 loan closing is clearly

9  preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq*., and its

10  implementing regulations, including 12 C.F.R. § 560, articulated by the Treasury Department's

11  Office of Thrift Supervision ("OTS").[3]  As detailed in Section 4(D), HOLA preemption is

12  triggered because the allegations within these claims relate to loan "terms of credit", mortgage

13  "disclosures", and the "origination" of plaintiff's mortgage.

14      When the loan in question was made to plaintiff, Wells Fargo's predecessor (World

15  Savings Bank, FSB) was a federally-chartered savings bank, organized and operating under

16  HOLA.  On December 31, 2007, World Savings changed its named to "Wachovia Mortgage,

17  FSB" and subsequently merged into "Wells Fargo Bank, N.A."  Attached to the accompanying

18  RJN are true and correct copies of records evidencing World Savings' initial charter, its

19  subsequent name change and merger, its governance by the Office of Thrift Supervision, and

20  HOLA's application.  (RJN, Exhs. A- E).

21  **B.    Regulations Promulgated By The OTS Preempt Any State Law That Affects The**

22      **Operation Of A Federal Savings Association**

23      Pursuant to HOLA, the OTS was granted power, "under such regulations as [it] may

24  prescribe – to provide for the organization, incorporation, examination, operation, and regulation

25  ─────────────────

26  [3]    Congress enacted HOLA during the Great Depression to "restore the public's confidence in savings and loan associations at a time when 40% of home loans were in default."  *Bank of*

27  *America v. The City & County of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002).  HOLA was enacted in part due to Congressional dissatisfaction with the regulation of home financing by the

28  states.  *American Banker Association v. Lockyear*, 239 F. Supp. 2d 1000, 1010 (E.D. Cal. 2002).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

of…Federal savings associations…" 12 U.S.C. § 1464(a).  The OTS is thus authorized "to prescribe a nationwide system of operation, supervision, and regulation which would apply to all federal associations." *Glendale Fed. Sav. & Loan Ass'n v. Fox*, 459 F. Supp. 903, 909 (C.D. Cal. 1978).

OTS regulations are "preemptive of any state law purporting to address the subject of the operations of a federal savings association." 12 C.F.R. § 545.2.  The "OTS hereby occupies the entire field of lending regulation for federal savings associations…" and a federal savings bank, "may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities." 12 C.F.R. § 560.2(a).[4]

Furthermore, the courts are quite clear that the HOLA regulations are "pervasive":

> We have described HOLA and its following agency regulations as … so pervasive as to leave no room for state regulatory control. [B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable. *Silvas v. E*Trade Mortgage Corp.,* 514 F.3d 1001, 1004-1005 (9th Cir. 2008).

As briefed below, these "pervasive" OTS regulations preempt any allegation that relates to the origination of the subject loan.

## C.   State Laws Preempted by HOLA

12 C.F.R. § 560.2(b) provides for preemption of state laws that purport to impose upon federal savings banks and their successors[5] any requirements regarding:

---

[4]    Indeed, case law casts a wide net over claims preempted by HOLA.  In *Bank of America v. City & County of San Francisco*, 309 F.3d 551, 558 (2002), the Ninth Circuit noted:  "[S]ince the passage of the HOLA in 1933, OTS regulations have governed the 'powers and operations of every federal savings and loan association from its cradle to its corporate grave.'"  The Supreme Court has noted that: "[i]t would have been difficult for Congress to give the [OTS] a broader mandate." *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-160 (1982).

[5]    Case law is clear that a successor to the originating FSB may also assert the defense of HOLA preemption. See e.g., *Metzger v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 59427, *11 (C.D. Cal. 2014) (in holding that Wells Fargo could assert HOLA as a defense, the court relied on a 2003 OTS Opinion Letter to conclude that HOLA preemption must apply to an assignee or purchaser of a FSB-originated loan, so as to preserve the secondary market value of the loan); *Poyorena v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49319, *15-16 (C.D. Cal. 2014) (court relied on HOLA to dismiss all state law claims with prejudice, explaining that "protections offered by HOLA may be transferred from one bank to another" and that HOLA "attaches to a loan, and continues with that loan throughout its lifetime."); *Marquez v. Wells*

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

7

***

**The terms of credit, including** amortization of loans and the deferral and capitalization of interest and **adjustments to the interest rate, balance, payments due, or term to maturity of the loan**, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; 12 C.F.R. § 560.2(b)(4)

**Disclosure and advertising,** including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants; 12 C.F.R. § 560.2(b)(9)

Processing, **origination**, servicing, sale or purchase **of**, or investment or participation in, **mortgages**; . . . 12 C.F.R. § 560.2(b)(10) (emphasis added)

***

**D.     The Application of HOLA Preempts State Law Claims That Challenge The Propriety Of The Loan Closing**

The preemption analysis under HOLA is simple.  Step one determines whether the type of state law appears on the list set forth in 12 C.F.R. § 560.2(b).  If it does, the analysis ends and the state law is preempted.  There is no second step.  *Silvas, supra*, at 1005.  Any doubt is resolved in favor of preemption.  *Weiss v. Washington Mutual Bank*, 147 Cal. App. 4th 72, 77 (2007).

Here, it is clear that plaintiff's origination-based allegations fall squarely within HOLA's preemptive regulations, because the complaint directly attacks the lending practices of a federal savings bank in the areas of "terms of credit" [12 C.F.R. § 560.2(b)(4)], loan "disclosures" [§ 560.2(b)(9)], and the "origination . . . of . . . mortgages." [§ 560.2(b)(10)].  With respect to the fraud allegations, plaintiff alleges "fraud by concealment"; namely, that Wells Fargo's predecessor (World Savings Bank, FSB) failed to adequately disclose various loan terms and improperly placed plaintiff in an affordable loan product due to lax underwriting standards. (e.g.,

---

*Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 131364, *10 (N.D. Cal. 2013) ("Numerous district courts have held that successors in interest may properly assert preemption under HOLA even if the successor entity is not a federally chartered savings."); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1126 (N.D. Cal. June 9, 2010) (same); *see also*, 9 Witkin, Summary of Cal. Law, *Corporations* § 198 (10th ed. 2005) (In a merger the surviving entity "succeeds to the rights, property, debts and liabilities, without other transfer.").

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

Comp. ¶¶ 5, 31-35, 57-62).  Similarly, the negligence claim is partially premised on allegations that Wells Fargo allowed plaintiff to refinance her home without adequately disclosing the risk of this mortgage. (e.g., Comp. ¶ 78).  The cause of action for elder abuse echoes these allegations, asserting that Wells Fargo's predecessor originated the loan without regard to plaintiff's "ability to repay the loan, in conscious disregard of [its] duties to [p]laintiff as well as to the American economy in general." (Comp. ¶ 86).

Indeed, courts have consistently held that such state law claims based on a lender's alleged failure to disclose loan terms are preempted.  For example, in *Garcia v. Wachovia Mortg. Corp.*, 676 F. Supp. 2d 895, 913 (C.D. Cal. 2009), the court explained that a lender's alleged failure to disclose adjustments to the interest rate and the negative amortization feature of the mortgage were preempted by §§ 560.2(b)(4) and (9).  See also, *Weiss v. Washington Mutual,* 147 Cal. App. 4th 72, 76-77 (2007) (claims for fraud and unfair business practices based upon an alleged failure to disclose a prepayment penalty were preempted); *Gomez v. Wachovia Mortg. Corp.*, 2010 U.S. Dist. LEXIS 3799, *7-8 (N.D. Cal. Jan. 15, 2010) (state claim alleging a failure to disclose a broker commission was held preempted by HOLA); *Andrade v. Wachovia Mortg., FSB,* 2009 U.S. Dist. LEXIS 34872, *8 (S.D. Cal. Apr. 21, 2009) (allegations that mortgage contained "excessive" or "unconscionable" fees were preempted under HOLA).

A lender's purported placement of a borrower in a loan without adequate consideration of the borrower's ability to repay the debt has also been held to be expressly preempted.  In *Garcia v. Wachovia Mortgage, Corp., supra,* 676 F. Supp. 2d at 913, the court held that plaintiff's allegations "relating to inability to qualify for the loan she was given … are preempted by § 560.2(b)(10)."  See also, *Camacho v. Wachovia Mortgage, FSB*, 2009 U.S. Dist. LEXIS 102243, *12 (S.D. Cal. Nov. 3, 2009).

Similarly, in *Cosio v. Simental,* 2009 U.S. Dist. LEXIS 8385 (C.D. Cal. Jan. 27, 2009), the court found that state law claims based on allegations that defendants convinced plaintiff to enter into a "complicated, risky and oppressive" mortgage and failed to disclose "the terms, risks and consequences of that type of loan," triggered several sections of § 560.2(b).  The *Cosio* court explained that "because the claims, as applied, turn on types of state laws listed in § 560.2(b), the

preemption analysis ends there." *Id.* at *13-15.

Finally, in *Stefan v. Wachovia, World Savings,* 2009 U.S. Dist. LEXIS 113480, *8-9 (N.D. Cal. Dec. 7, 2009), the court dismissed allegations that the loan agreement was "unconscionable", explaining that such allegations triggered the "terms of credit" provision described in § 560.2(b)(4).

As in the above decisions, several state law claims in the present suit challenge the origination of a mortgage by a federal savings association, and therefore these claims fit squarely within §§ 560.2(b)(4), (9) and (10).  If not preempted, these types of state claims would unquestionably impinge upon the lending policies of federal loan associations.  This is something Congress sought to avoid through the passage of HOLA.

**5.**   **PLAINTIFF'S CLEAR INABILITY TO TENDER EVEN A PORTION OF HER CONSIDERABLE DEBT IS A DEATH KNELL TO THIS ACTION**

Much of the complaint seeks equitable relief, including restitution (Comp. ¶ 121; Prayer for Relief ¶ 6), rescission of the subject loan (Comp. at p.2), and an order enjoining a foreclosure sale. (Comp. ¶¶ 71, 105, 111-112; Prayer ¶¶ 2-4, 6).  However, to receive equitable relief, a debtor must make a valid tender of the full outstanding debt.  See e.g., *Sipe v. McKenna*, 88 Cal. App. 2d 1001, 1006 (1948) ("A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale . . ."); *Gavina v. Smith*, 25 Cal. 2d 501, 505-506 (1944) (quiet title denied where the debtor had not fulfilled its contractual obligations); *Touli v. Santa Cruz County Title Co.*, 20 Cal. App. 2d 495, 499-500 (1937) (rescission of deed of trust is only an available remedy once the borrower tenders her full debt); *Meetz v. Mohr*, 141 Cal. 667, 673 (1904) (injunction denied due to lack of tender).

Likewise, a debtor must make a valid tender when bringing a claim that challenges the foreclosure process, or when asserting any cause of action "implicitly integrated to the sale." See e.g., *Alicea v. GE Money Bank*, 2009 U.S. Dist. LEXIS 60813, *7-8 (N.D. Cal. July 16, 2009) ("When a debtor is in default on a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to

maintain any cause of action for foreclosure."); *Montoya v. Countrywide Bank*, 2009 U.S. Dist. LEXIS 53920, *32 (N.D. Cal. June 25, 2009) ("as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt."); *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (the tender rule applies "to any cause of action for irregularity in the sale procedure.").  The rationale behind this requirement "is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *FCPI v. E&G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1022 (1989).

Here, plaintiff's arrearage stood at $27,631.17 in October 2013, and this debt has continued to grow. (RJN, Exh. K).  Given plaintiff's failure to make mortgage payments and the concession that her income is $1,159 per month (Comp. ¶¶ 32, 39), an inability to tender even a portion of the arrearage is manifest.  *Anaya v. Advisors Lending Group,* 2009 U.S. Dist. LEXIS 68373, *27 (E.D. Cal. Aug. 3, 2009) (a failure to make monthly payments reflects an inability to tender the amount owed).  For this reason alone, allowing plaintiff's claims to survive would not only be unfair, but a waste of judicial resources.

## 6.   THE FRAUD CLAIM IS PLAGUED BY ADDITIONAL SHORTCOMINGS

Putting aside the three-year statute of limitations, federal preemption, and plaintiff's lack of tender, the fraud claim fails for the critical reasons set forth below and is therefore incapable of amendment.

### A.   Plaintiff Fails To Plead The Elements Of Fraud With The Required Specificity

To begin with, the fraud allegations do not meet the particularity requirements of FRCP 9(b).  The elements of fraud and deceit are:  (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages.  Under Rule 9(b), fraud allegations are subject to a higher pleading standard and must be specifically pled.  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093-1094 (C.D. Cal. 1999) (reciting California elements).

Rule 9(b) mandates the explicit identification of context.  "This means the who, what, when, where, and how. . ." *Glen Holly, supra*, 100 F. Supp. 2d at 1094.  As for corporate

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

defendants, Rule 9(b) requires plaintiff to specifically plead:  (1) the misrepresentation, (2) the speaker and his or her authority to speak, (3) when and where the statements were made, (4) whether the statements were oral or written, (5) if statements were written, the specific documents containing the representations, and (6) the manner in which the representations were allegedly false or misleading.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 549 (9th Cir. 1989).  Vague or conclusory allegations are insufficient to satisfy Rule 9(b)'s "particularity" requirement.  *Moore*, 885 F.2d at 540; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).  Thus, merely identifying allegedly fraudulent conduct fails.

Here, the complaint falls well short of meeting any of these requirements.  Plaintiff fails to name a single individual who made a misrepresentation, when the alleged misrepresentation(s) were made, or whether the purported statements were oral or in writing.  This simply does not put Wells Fargo on fair notice to defend.

**B.**   **The "Fraud By Concealment" Allegations Fail As A Matter Of Law**

At its heart, this suit alleges "fraud by concealment"; namely, that Wells Fargo's predecessor (World Savings Bank, FSB) failed to adequately disclose various loan terms and conditions. (e.g., Comp. ¶¶ 5, 31-35, 57-62).  For example, plaintiff stresses that she was given an "exotic" adjustable rate loan with terms that were "not clear or conspicuous." (Comp. ¶ 31).  It is further alleged that had Wells Fargo employed more stringent underwriting guidelines, plaintiff would never have qualified for this $975,000 loan. (Comp. ¶ 32; see also, ¶¶ 33-34).

The elements of fraud by concealment are:  "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud, (4) the plaintiff must have been unaware of the fact and would have not acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Hahn v. Mirda*, 147 Cal. App. 4th 740 (2007).

In essence, plaintiff attempts to allege that Wells Fargo should have placed her in a more conservative loan; however, case law is clear that a borrower bears the ultimate responsibility for

the debt obligations she assumes.  An illustrative case is *Leisher v. Wachovia Mortg., Inc.*, 2011 U.S. Dist. LEXIS 3037, *16 (S.D. Cal. Jan. 12, 2011), in which the complaint alleged that the lender advised plaintiff "to enter into an unconscionable loan on the false and misleading representation that Plaintiff had the ability to repay the loan, or that the loan could be refinanced..."  In granting the bank's 12(b)(6) motion without leave and dismissing the claim for breach of fiduciary duty, the district court explained that a lender has no obligation to place borrowers in a suitable loan product.  *Leisher*, 2011 U.S. Dist. LEXIS at *16-17.

The California Court of Appeal echoed this view in *Perlas v. GMAC Mortgage, LLC*, 2010 Cal. App. LEXIS 1411, *10-14 (2010).  In *Perlas*, the court rejected allegations that a bank should have known that a loan was not affordable, for this position "ignores the nature of the lender-borrower relationship" – specifically, that "there is no fiduciary relationship between the borrower and lender" and that "[a] commercial lender pursues its own economic interests in lending money."  *Perlas*, 2010 Cal. App LEXIS at *13; *see also, Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1161 (N.D. Cal. 2011); *Kurek v. America's Wholesale Lender*, 2011 U.S. Dist. LEXIS 82669, *9-10 (N.D. Cal. July 28, 2011) (in dismissing a UCL claim, the court cited *Perlas* for the proposition that "lenders do not owe borrowers a duty of care during the loan qualification process because it is an arm's length transaction . . .").

**C.**     **Plaintiff Cannot Plead "Justifiable Reliance" Or Resulting Damages**

A fraud claim must also allege specific facts supporting the plaintiff's supposed reliance.  *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) explained that "the mere assertion of 'reliance' is insufficient."  Here, the complaint does not provide any meaningful information; it simply states in conclusory fashion "that Plaintiff relie[d] on these material misrepresentations and material non-disclosures. . ." (Comp. ¶ 69).

More importantly, plaintiff cannot credibly allege that she has suffered damages as a result of Wells Fargo's purported conduct.  The complaint stresses that "[p]laintiff is entitled to actual damages including, but not limited to loss of money and property . . . [from] overcharges and unlawfully unfavorable loan terms" (Comp. ¶ 70); however, plaintiff faces the prospect of losing her property because she took out a loan far beyond her ability to repay.  Indeed, the law

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

is settled that without any damages, a plaintiff has no remedy and without a remedy, there is no

viable claim.  See e.g., *Conrad v. Bank of America*, 45 Cal. App. 4th 133, 159 (1996)

("Misrepresentation, even maliciously committed, does not support a cause of action unless the

plaintiff suffered consequential damages"); *Fields v. Napa Milling Co.*, 164 Cal. App. 2d 442,

448 (1958) ("a wrong without damage does not constitute a cause of action for damages . . .");

*McAllister v. Clement*, 75 Cal. 182, 184 (1888) ("But it is clear that no action will lie to recover

damages if no damages have been sustained.").

For all of the above reasons, plaintiff's fraud claim should be dismissed with prejudice, as

with the rest of the complaint.

## 7.   THE NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW

As with the fraud cause of action, plaintiff's negligence claim incorporates the "general

allegations" by reference and challenges the propriety of both the 2007 loan origination and the

recent foreclosure mechanics. (Comp. ¶¶ 74-82).  This second cause of action suffers from many

of the same defects as the fraud claim – for example, the origination-based allegations fall prey

to federal preemption and a time bar.

Furthermore, the entire negligence claim fails due to the absence of a duty of care owed

to plaintiff.  In *Nymark v. Hart Federal Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096

(1991), the California Supreme Court explained:

> [A]s a general rule, a financial institution owes no duty of care to a
> borrower when the institution's involvement in the loan transaction
> does not exceed the scope of its conventional role as a mere lender
> of money.

In the present case, the pleadings fail to characterize Wells Fargo as anything but a

conventional lender.  After all, Wells Fargo's predecessor (World Savings) originated the subject

loans and Wells Fargo initiated a non-judicial foreclosure following plaintiff's default.

Indeed, the overwhelming majority of courts have concluded that no duty of care is owed

by a bank when conducting a non-judicial foreclosure or when performing related loan servicing

activities, such as reviewing a borrower for a potential modification.  *Lueras v. BAC Home*

*Loans Servicing, LP*, 221 Cal. App. 4th 49, 67-68 (2013).  In rejecting the viability of a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

negligence claim, the *Lueras* court clarified that the lender "did not have a duty of care to handle [the borrower's] loan 'in such a way to prevent foreclosure and forfeiture of his property.'  Their rights, duties, and obligations in those regards were set forth in the note and deed of trust, the Forbearance Agreement, federal and state statutes and regulations, and the directives and announcements of the United States Department of the Treasury and Fannie Mae." *Lueras*, 221 Cal. App. 4th at 68; see also, *Gonzales v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 154851, *20 (N.D. Cal. Oct. 29, 2012) ("A loan modification, which is nothing more than a renegotiation of loan terms, falls well within an institution's conventional money-lending role."); *Settle v. World Savings Bank, FSB*, 2012 U.S. Dist. LEXIS 4215, *24 (C.D. Cal. Jan. 11, 2012) ("Numerous cases have characterized a loan modification as a traditional money lending activity.").

Another illustrative case is *Lawrence v. Aurora Loan Servs. LLC*, 2010 U.S. Dist. LEXIS 5373 (E.D. Cal. 2010), for as with the instant action, the plaintiffs alleged that their lender committed negligence by proceeding with the foreclosure process.  Specifically, the plaintiffs "allege[d] that Aurora 'carelessly and negligently permitted a trustee's sale to occur on the Property despite the fact that Plaintiffs were not properly served with the Notice of Default or Notice of Sale.'" *Lawrence*, 2010 U.S. Dist. LEXIS at *22.  However, the district court dismissed the negligence claim with prejudice, citing *Nymark* and explaining that there were no "special circumstances" that would warrant the imposition of a duty of care on defendant Aurora. *Id*. at *25.  In reaching this holding, the *Lawrence* court added that "[p]ublic policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Id*. at *25-26 (citing *Wagner v. Benson*, 101 Cal. App. 3d 27, 34 (1980)).

Since plaintiff is unable to impute a duty of care to Wells Fargo, the negligence cause of action must necessarily fail.  Furthermore, plaintiff has not satisfactorily alleged causation or resulting injury, as briefed in Section 6 above.

### 8.   THE ELDER ABUSE CLAIM IS LIKEWISE DEFECTIVE

Moving on to the third cause of action, plaintiff alleges that she was a senior citizen at the time of the 2007 loan closing (Comp. ¶ 84) and that she was given a mortgage without regard to

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

"[her] ability to repay the loan, in conscious disregard of [the lender's] duties to Plaintiff as well as to the American economy in general." (Comp. ¶ 86). Even if plaintiff could somehow side step the statute of limitations and the issue of preemption, her claim fails as a matter of law.

Financial abuse is defined in Section 15610.30(a) of California's Welfare and Institutions Code, which provides:

> "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following: (1) Takes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both; (2) Assists in taking, secreting, appropriating, or retaining real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both; [or] (3) Takes, secretes, appropriates, obtains, retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

Case law is clear that the mere extension of a loan does not give rise to elder abuse liability against a lender. *Das v. Bank of America, N.A.*, 186 Cal. App. 4th 727, 744 (2010) ("Nothing in appellant's complaints suggests that respondent, in issuing a loan to [borrower] and transferring his funds at his request, obtained his property for an improper use, or acted in bad faith or with a fraudulent intent."); See also, *Nevis v. Wells Fargo Bank*, 2007 U.S. Dist. LEXIS 65932, *10-11 (N.D. Cal. Sept. 6, 2007) (finding that plaintiff's bare allegations that lender acted in bad faith and intended to defraud plaintiff by inducing her into unmanageable loan were not specific enough to allege claim of elder abuse); *McGill v. Wachovia Mortg., FSB Loan*, 2010 U.S. Dist. LEXIS 43393, *33-34 (E.D. Cal. Mar. 3, 2010) (relying on *Nevis* in dismissing the borrower's elder abuse claim against lender).

Moreover, Welfare and Institutions Code § 15657(c) requires compliance with Civil Code § 3294 before a plaintiff can maintain a cause of action for elder abuse. That means pleading and proving corporate ratification or authorization of the intentional misconduct. To establish corporate ratification of an intentional tort under Civil Code § 3294, a plaintiff must prove that a managing agent approved and ratified the intentional tort. Such a managing agent includes "only those corporate employees who exercise substantial independent authority and judgment in their corporate decision making so that their decisions ultimately determine

1    corporate policy." *White v. Ultramar*, 21 Cal. 4th 563, 566-567 (1999).  In the instant action,

2    there are no allegations that an officer, director, or managing agent had any involvement with the

3    2007 loan origination or the subsequent non-judicial foreclosure process.

4    **9.    PLAINTIFF SHOULD NOT BE ALLOWED TO PROSECUTE HER CAUSES OF**

5    **ACTION WHICH ALLEGE A VIOLATION OF CIVIL CODE §§ 2923.5 AND 2924**

6            The fourth cause of action is labeled as a "violation of California Civil Code § 2924, *et*

7    *seq.*", although this claim is actually predicated on the allegation that Wells Fargo violated the

8    Perata Mortgage Relief Act (former Civil Code § 2923.5) by recording a notice of default

9    without attempts to contact plaintiff to discuss her delinquency and possible foreclosure

10   alternatives. (Comp. ¶¶ 91-105; see also, ¶¶ 40-41).  The fifth cause of action is based on the

11   allegation that Wells Fargo violated the recently-enacted Homeowners' Bill of Rights (the

12   "HBOR") by engaging in "dual tracking" and failing to provide plaintiff with a meaningful

13   appeal of her modification denial. (Comp. ¶¶ 106-112; see also, ¶¶ 44-53).  As addressed below,

14   these claims are not adequately pled.

15   **A.    Wells Fargo Did Not Violate The Perata Mortgage Relief Act**

16           First, the notice of default at issue contains a declaration made by a Wells Fargo officer,

17   stating that:  "The mortgage servicer has contacted the borrower pursuant to California Civil

18   Code § 2923.55(b)(2) to 'assess the borrower's financial situation and explore options for the

19   borrower to avoid foreclosure.'  Thirty (30) days or more have passed since the initial contact

20   was made."  (RJN, Exh. K at p. 3).  Plaintiff contends that this declaration is false (Comp.

21   ¶ 101), yet such a conclusory allegation is insufficient to overcome the presumption that Wells

22   Fargo complied with its statutory obligations.  See e.g., *Kamp v. Aurora Loan Services,* 2009

23   U.S. Dist. LEXIS 95245, *6 (C.D. Cal. Oct. 1, 2009) ("Plaintiffs' conclusory assertions are

24   contradicted by the notice of default attached as Exhibit A, which includes the declaration

25   required by section 2923.5"); *Juarez v. Wells Fargo Bank, N.A.,* 2009 U.S. Dist. LEXIS 110892,

26   *2 (C.D. Cal. Nov. 11, 2009) (holding that the declaration attached to the notice of default

27   showed that Wells Fargo *did* in fact comply with Section 2923.5).  In essence, plaintiff seeks to

28   convince the Court that Wells Fargo allowed its borrower to accrue over $27,000 in debt without

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

CASE NO.: 4:14-CV-04169-DMR
MEMO OF POINTS AND AUTHORITIES

1   an attempt to contact this individual regarding the growing delinquency.

2   Furthermore, the Perata Act only applies if the property is and at all relevant times was

3   "owner-occupied", as required by Civil Code § 2923.5(i).  Here, the pleadings simply allege that

4   "[t]he real property that is the subject of this case is located at 17 Chapel Drive, Lafayette,

5   California. . ." (Comp. ¶ 7) and that plaintiff "is an individual residing in Contra Costa County,

6   California and is the owner of the Subject Property." (Comp. ¶ 11).  As things stand, the

7   pleadings have not satisfied the requirement of Section 2923.5(i).

8   Finally, any claim that points to an alleged flaw in the foreclosure mechanics must be

9   accompanied by a legitimate tender.  See e.g., *Khan v. ReconTrust Co.*, 2012 U.S. Dist. LEXIS

10  91589, *18-21 (N.D. Cal. July 2, 2012) (claim for wrongful foreclosure based on violations of

11  Civil Code §§ 2923.5 and 2924 was dismissed because plaintiff failed to tender the debt

12  obligation or even allege that she could make such a tender); see also, *Abdallah, supra*, 43 Cal.

13  App. 4th at 1109 (1996) (the tender requirement applies "to any cause of action for irregularity in

14  the sale procedure."); *Montoya, supra*, 2009 U.S. Dist. LEXIS at *32 (N.D. Cal. 2009) ("as a

15  precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the

16  sale, the borrower must make a valid and viable tender of payment of the secured debt.").

17  For all of these reasons, plaintiff's claim under the Perata Mortgage Relief Act is

18  defective, as with the rest of the complaint.

19  **B.   Plaintiff's Allegations Under The HBOR Are Likewise Defective**

20  In addition to the claim under the Perata Mortgage Relief Act, plaintiff alleges that the

21  foreclosure mechanics are flawed because Wells Fargo refused to perform a modification review

22  in "good faith." (Comp. ¶¶ 43-55, 106-112).  The pleadings further allege in entirely conclusory

23  fashion that Wells Fargo committed "dual tracking", in violation of Civil Code § 2923.6. (Comp.

24  ¶ 109; see also, ¶ 53).  Although the pleadings are muddled, the fifth cause of action suffers from

25  several clear shortcomings.

26  First, plaintiff has not adequately alleged a claim of "dual tracking" under the California

27  Homeowners' Bill of Rights. (the "HBOR").  Pursuant to Civil Code § 2923.6(c), a lender

28  cannot record a foreclosure notice if a review of a "complete" loan modification application is

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   pending. In the present case, plaintiff alleges that she "submitted a loan modification application

2   on December 30, 2013" (Comp. ¶ 44); however, there is no indication that Wells Fargo ever

3   acknowledged this application as "complete." More importantly, the pleadings concede that

4   plaintiff's "single point of contact" (Kyle Sexe) responded on March 31, 2014, sending plaintiff

5   a loan modification denial letter which stated that "no mortgage assistance solution was possible

6   and normal collections would resume." (Comp. ¶ 48). In other words, Wells Fargo's subsequent

7   recordation of a notice of sale on August 22, 2014 did not constitute dual tracking, for a

8   modification review was no longer "pending."

9       Furthermore, there is no merit to the allegation that Wells Fargo has not "negotiate[d] in

10  good faith. . ." (Comp. ¶ 53; see also, ¶ 108). Plaintiff stresses that the purpose of the HBOR is

11  to provide borrowers with "available loss mitigation options" (Comp. ¶ 108), yet the HBOR

12  imposes no obligation to provide a loan modification. Pursuant to Civil Code § 2923.4, the

13  purpose of the HBOR is simply: "to ensure that, as part of the nonjudicial foreclosure process,

14  borrowers are considered for, and have a meaningful opportunity to obtain, available loss

15  mitigation options, if any, offered by or through the borrower's mortgage servicer . . .". Section

16  2923.4 then clarifies that: "Nothing in the act that added this section, however, shall be

17  interpreted to require a particular result of that [review] process."

18      Put another way, any modification denial would be in "bad faith" if the determination

19  was left up to the delinquent borrower. In the present case, Wells Fargo's basis for denying a

20  modification seems eminently reasonable – after all, plaintiff has an outstanding debt of

21  $1,095,487.19, as reflected in the notice of sale recorded in August 2014. (RJN, Exh. L at p.2).

22  Based on plaintiff's modest income and admitted financial hardship (e.g., Comp. ¶¶ 32, 39), she

23  would almost certainly default on a modified loan, even if Wells Fargo were to substantially

24  reduce the principal balance as part of the modification.

25      On a final note, plaintiff fails to allege any *facts* showing that the purported HBOR

26  violation was material. *See* Civil Code § 2924.12(a) (authorizing injunctive relief only where

27  there is a "material" violation). Based on the threadbare allegations in the complaint, plaintiff

28  has not alleged any HBOR violation, let alone a "material" violation.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   **10.   AS WITH THE REST OF THE COMPLAINT, THE UNFAIR COMPETITION**

2   **CLAIM IS RIDDLED WITH DEFECTS**

3   The sixth claim incorporates the prior allegations by reference and alleges that Wells

4   Fargo has committed unfair competition. (Comp. ¶¶ 113-121).  Among other things, this final

5   claim suffers from several key deficiencies.

6   **A.   The Unfair Competition Allegations Are Conclusory And Meritless**

7   Even if plaintiff could side step the defects articulated throughout this motion, a UCL

8   claim must state with reasonable particularity the facts showing unlawful, unfair, or fraudulent

9   business acts on the part of the defendant.  *Korea Supply Company v. Lockheed Martin*

10  *Corporation*, 29 Cal. 4th 1134, 1143 (2003); *Khoury v. Maly's of California, Inc.*, 14 Cal. App.

11  4th 612, 619 (1993).  To the extent the UCL claim is based on alleged fraud, it must be pleaded

12  with heightened specificity.  *Neu v. Terminix Int'l, Inc.*, 2008 U.S. Dist. LEXIS 32844, *13-14

13  (N.D. Cal. Apr. 8, 2008).  As briefed above, plaintiff's allegations fall well short of Rule 9's

14  heightened pleading standard.

15  Paragraph 116 of the complaint enumerates a list of specific "deceptive" loan servicing

16  practices, yet like the rest of the pleadings, these allegations are not supported by *factual*

17  allegations. (Comp. ¶ 116:  Wells Fargo allegedly instituted "improper or premature foreclosure

18  proceedings", "record[ed] false and misleading documents", and committed "[o]ther deceptive

19  business practices, including but not limited to applying improper [cost-of-savings-index]

20  adjustments to Plaintiff's loan. . .").  As stressed in *Ogilvie v. Select Portfolio Servicing*, 2012

21  U.S. Dist. LEXIS 147493, *24-25 (N.D. Cal. Oct. 12, 2012), facts supporting a UCL claim must

22  be presented "with reasonable particularity."  In dismissing the borrower's UCL claim with

23  prejudice, the district court explained that: "Plaintiff simply lists a number of general allegations

24  about Defendants' activities with respect to mortgage loan servicing and foreclosure."  *Ogilvie*,

25  2012 U.S. Dist. LEXIS at *25.

26  Equally importantly, the prior sections of this motion set forth the reasons why plaintiff's

27  allegations fail as a matter of law, and why Wells Fargo did not commit an unlawful, unfair or

28  fraudulent act during the 2007 loan origination or the recent non-judicial foreclosure.  Because

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   plaintiff's first through fifth claims suffer from incurable shortcomings, the derivative UCL

2   claim falls by the wayside.

3   **B.**   **Plaintiff Lacks Standing To Assert An Unfair Competition Claim**

4         Furthermore, a private litigant must allege that they suffered injury in fact and lost money

5   or property as a result of the unfair competition.  B&P Code § 17204; see also, *Daro v. Superior*

6   *Court*, 151 Cal. App. 4th 1079, 1098 (2007).  Here, there is an absence of any causation of actual

7   loss, which is essential.  *Hall v. Time, Inc.*, 158 Cal. App. 4th 847 (2008).  Plaintiff has no loss

8   because she borrowed money and has not repaid the loan.

9         An illustrative case is *DeLeon v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 8296

10  (N.D. Cal. Jan. 28, 2011), in which two borrowers brought a UCL claim, alleging that their

11  lender wrongfully proceeded to sale.  The court held that: "the facts alleged suggest that

12  Plaintiffs lost their home because they became unable to keep up with monthly payments and

13  lacked the financial resources to cure the default . . . it does not appear that [the bank's] conduct

14  resulted in a loss of money or property.  For this reason, Plaintiffs lack standing to sue under the

15  UCL, and the claim must be dismissed."  *DeLeon*, 2011 U.S. Dist. LEXIS at *21.

16  **C.**   **Plaintiff's Inability To Tender Her Debt Bars The UCL Claim**

17        On a final note, it must be stressed that only equitable relief is available under the UCL –

18  specifically, restitution and injunctive relief.  *Korea, supra*, 29 Cal. 4th 1134, 1144-45 (2003);

19  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002).  However, to receive such equitable relief, a plaintiff

20  must make a valid tender of her indebtedness. (see Section 5 for relevant case law).

21        Here, the pleadings address the fact that plaintiff has very modest income and no savings,

22  and thus plaintiff concedes an inability to make a legitimate tender.  For this reason alone, the

23  UCL claim must necessarily fail.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1       **11.  <u>CONCLUSION</u>**

2           For all of the foregoing reasons, Wells Fargo requests an order granting its motion to

3   dismiss all six claims in the complaint without leave to amend.

4

5                                           Respectfully submitted,

6   Dated:  October 1, 2014                 ANGLIN, FLEWELLING, RASMUSSEN,
                                            CAMPBELL & TRYTTEN LLP
7

8                                           By:   _/s/ Michael Rapkine_____
                                                Michael Rapkine
9                                               mrapkine@afrct.com
                                            Attorneys for Defendant
10                                          WELLS FARGO BANK, N.A.
                                            ("Wells Fargo")
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California  91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANT WELLS FARGO'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

on the interested parties in said case as follows:

*Served Electronically Via the Court's CM/ECF System:*

| **Attorneys for Plaintiff** | **Associated Counsel for Plaintiff** |
|---|---|
| Marie G. Quashnock, Esq. | James Andre Boles, Esq. |
| Edward Younger, Esq. | LAW OFFICE OF JAMES ANDRE BOLES, |
| ALVIS QUASHNOCK AND ASSOCIATES, | ESQ. |
| a PC | 10627 Almond Avenue |
| 613 First Street, Suite 202 | Oak View, CA 93022 |
| Brentwood, CA 94513 | Tel: 775.997.4915 \| Fax: 805.500.5410 |
| Tel: 925.516.1617 \| Fax: 925.775.7008 | *Email: jandyboles@yahoo.com* |
| *Email: maire@aqalegal.com* | |
| *Email: ed@aqalegal.com* | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on **October 1, 2014**.

| Barbara Cruz | */s/ Barbara Cruz* |
|---|---|
| (Type or Print Name) | (Signature of Declarant) |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP