United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INGA O. STILES, | No. C-14-04169 DMR |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DOCKET NO. 11]** |
| v. | |
| WELLS FARGO BANK, *et al.*, | |
| Defendants. | |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves the court to dismiss Plaintiff Inga O. Stiles's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Docket No. 11.] The court held a hearing on the motion on December 11, 2014. For the following reasons, Defendant's motion is granted and Plaintiff's complaint is dismissed with leave to amend.

**I. Background**

The following facts are allegations Plaintiff makes in her complaint, all of which are taken as true solely for purposes of this motion.[1] In 2007, Plaintiff, who was 69 years old, refinanced her home loan and executed a promissory note for $975,000 in favor of World Savings Bank, FSB

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

("World Savings Bank"), which was secured by a deed of trust on her real property in Lafayette, California ("the property"). (Compl. ¶ 30; Def.'s Req. for Judicial Notice in Supp. of Mot.[2] ("RJN"), Ex. G (deed of trust).) In November 2007, World Savings Bank became Wachovia Mortgage, FSB ("Wachovia"), and in November 2009, Wachovia merged into Wells Fargo. (RJN Exs. B, C.[3])

Plaintiff alleges that at the time she refinanced her loan, her partner had been diagnosed with cancer and she was living on Social Security and a small retirement income. (Compl. ¶ 25.) After being contacted by a World Savings Bank representative about the possibility of refinancing, Plaintiff expressed her desire for a loan with payments she could afford on her own, without assistance from her partner due to his terminal illness. (Compl. ¶ 28.) The representative advised Plaintiff that she could qualify for a $975,000 loan, and stated that the bank would use Plaintiff's daughter's income in order to qualify Plaintiff for the loan. (Compl. ¶ 29.) Plaintiff alleges that World Savings Bank "illegally, deceptively and/or otherwise unjustly, qualified Plaintiff for a loan" which it knew or should have known that Plaintiff could not afford. (Compl. ¶ 32.) At the time she qualified for the loan, Plaintiff was "a retired elderly woman" with a total monthly income of approximately $1,159. The starting monthly payment on the loan was $3,579.47. (Compl. ¶ 32.) Additionally, the terms of the loan were "not clear or conspicuous, . . . violating several statutes and in essence creating an illegal loan." (Compl. ¶ 31.) Plaintiff's partner died in February 2008, leaving no assets to assist Plaintiff in paying the loan. (Compl. ¶ 36.)

Plaintiff struggled to make the minimum monthly payment on her loan, relying on financial assistance from her daughter and ultimately renting the property to others. (Compl. ¶ 37.) In late

---

[2] The court grants Defendant's request for judicial notice of Exhibits G-H and K-L, the deed of trust, notices of default, and notice of trustee's sale recorded in connection with Plaintiff's loan. They are true and correct copies of official public records of the Contra Costa County Recorder's Office, and their authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b). The court also grants Defendant's request for judicial notice of Exhibit F, the 2007 promissory note, to which the complaint refers. *See Branch v. Tunnell*, 14 F.3d 499, 453-54 (9th Cir. 1994).

[3] The court grants Defendant's request for judicial notice of Exhibits A-E, which establish the history of World Savings Bank, FSB. The court finds that these are true and correct copies of documents reflecting official acts of the executive branch of the United States, and that they are judicially noticeable pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

2009, Plaintiff defaulted on the loan. A notice of default was recorded on March 18, 2010. (RJN Ex. H.) It appears that Plaintiff cured her delinquency on the loan at some point. (*See* Def.'s Mot. 3.) In September 2012, Plaintiff's daughter was killed in a car accident, and Plaintiff became involved in resulting litigation. (Compl. ¶ 38.) In June 2013, Plaintiff's tenants moved out and Plaintiff moved back into the property. (Compl. ¶ 39.) Plaintiff missed her June 2013 loan payment and has not made any payments since then. (Compl. ¶ 39.)

A second notice of default was recorded on October 22, 2013. (Compl. ¶ 42; RJN Ex. K.) Defendant filed a "Declaration of Compliance" executed on August 27, 2013 by Ursula Dupree, Defendant's Vice President of Loan Documentation, in which Dupree states that Wells Fargo had contacted Plaintiff pursuant to California Civil Code section 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (RJN Ex. K (quotation marks omitted).) Plaintiff alleges that she was not contacted by anyone at Wells Fargo prior to August 27, 2013 to discuss her options, contrary to Dupree's statement. (Compl. ¶ 40.)

Plaintiff alleges that upon receiving a letter from Wells Fargo in September 2013 informing her that the loan was being referred to foreclosure, she contacted an attorney to initiate the loan modification application process. (Compl. ¶ 41.) She submitted a loan modification application on December 30, 2013 and responded to requests for additional information. (Compl. ¶ 44.) On February 13, 2014, Defendant's "single point of contact," Kyle Sexe, informed Plaintiff's representative that her application had been denied, and stated that Plaintiff could "appeal or move." (Compl. ¶ 45.) Despite making multiple requests, Plaintiff never received a denial letter from Defendant, and on March 31, 2014, Sexe sent Plaintiff a letter stating "no mortgage assistance solution was possible and normal collections would resume." (Compl. ¶¶ 45-48.) Plaintiff alleges that she was not afforded a proper appeals process following the denial of her loan modification application, alleging that Defendant "has been at all times engaged in a shell game, promising modification, purposely defecting [sic] loan modification documents, while moving intently and purposefully toward foreclosure of Plaintiff's family home, just to financially profit, at Plaintiff's expense and to her detriment." (Compl. ¶¶ 49-52.)

Defendant recorded a notice of trustee's sale on August 22, 2014. (Compl. ¶ 51; RJN Ex. L.) On September 4, 2014, Plaintiff filed a complaint in Contra Costa Superior Court alleging six claims against Defendant: 1) fraud; 2) negligence; 3) elder abuse; 4) wrongful foreclosure; 5) violation of California Civil Code sections 2923.5 and 2923.6; and 6) violation of California Business & Professions Code section 17200 *et seq*. ("Unfair Competition Law," or "UCL"). Defendant removed the action on September 16, 2014 and now moves to dismiss.

In her opposition to the motion to dismiss, Plaintiff represents that she has reinstated the loan and is no longer in arrears. Defendant does not dispute that the loan is current.

## II. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court "accept[s] as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation and quotation marks omitted). When a complaint presents a cognizable legal theory, the court may grant the motion if the complaint lacks "sufficient factual matter to state a facially plausible claim to relief." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).

"[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict

4

facts which may be judicially noticed. *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. Analysis

Upon review of the complaint, most of Plaintiff's causes of action appear to be premised upon two separate courses of conduct. Plaintiff first alleges that Defendant is liable for fraud, negligence, and elder abuse based on its actions in connection with the origination of the 2007 refinance loan, including originating a loan Defendant knew or should have known Plaintiff could not afford. Plaintiff next challenges Defendant's actions with respect to the 2013-2014 foreclosure process, alleging that Defendant failed to contact her before recording the second notice of default, engaged in unlawful dual tracking, and refused to negotiate a loan modification in good faith. Plaintiff also brings fraud, negligence, and elder abuse claims based upon this conduct. The court will address each set of allegations separately.[4]

#### A. Claims Targeting the 2007 Loan Origination

Plaintiff brings three claims based in part upon the origination of the 2007 refinance loan: fraud, negligence, and elder abuse. (Compl. ¶¶ 57-63, 66, 76-82, 83-86.) Although not entirely clear, it appears that her UCL claim that Defendant has committed fraudulent business acts or practices may also be based in part on the loan origination. (Compl. ¶¶ 115, 116, 120.) Plaintiff's claims related to the 2007 loan origination are based upon allegations of "illegalities in the

---

[4] Plaintiff also makes an allegation about the securitization of the 2007 loan. (*See* Compl. ¶ 23 ("Plaintiff is further informed and believes that the subject loan was a portfolio loan held by Wachovia Bank which was never securitized."); Pl.'s Opp'n 2 ("Plaintiff alleges impropriety in the loan's securitization as well.").) However, the extent to which any of Plaintiff's causes of action are premised upon a securitization theory is not clear. Further, claims based upon this theory must be dismissed because Plaintiff does not allege how she has standing to challenge the validity of the securitization process. As recognized by numerous courts, Plaintiff lacks standing to challenge the process by which her mortgage was securitized because she was not a party to any agreements that governed the securitization of the note. *See Junger v. Bank of Am., N.A.*, No. CV 11-10419 CAS (VBKx), 2012 WL 603262, at *1, 3 (C.D. Cal. Feb. 24, 2012) (rejecting allegations that "defendants failed to adhere to the January 31, 2006 deadline for transferring the note as required by the pool servicing agreement ("PSA") that governed the securitization of the note" and holding that plaintiff lacked standing to challenge securitization of loan because he was not party to the PSA); *Almutarreb v. Bank of New York Trust Co., N.A.*, No. C-12-3061 EMC, 2012 WL 4371410, at *2 (N.D. Cal. Sept. 24, 2012) (holding that plaintiffs "lack standing to challenge the validity of the securitization process.").

origination that led to monthly payments that Plaintiff eventually could no longer afford." (Pl.'s Opp'n 2.)

Defendant contends that the origination-based claims attack the lending practices of a federal savings bank and are therefore preempted by the Home Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 *et seq.* HOLA provides the Office of Thrift Supervision ("OTS") with broad authority to issue regulations governing federally chartered savings associations. *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004-05 (9th Cir. 2008). Because Wells Fargo's predecessor, World Savings Bank, was a federally chartered savings bank regulated by the OTS under HOLA at the time of Plaintiff's loan origination, HOLA governs the preemption analysis here. *See Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011) ("'Where a national association, such as Defendant, acquires the loan of a federal savings bank, it is proper to apply preemption under HOLA.'") (quoting *Guerrero v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 96261, at *8 (C.D. Cal. Sept. 14, 2010)); *see also Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2014 WL 890016, at *6-7 (N.D. Cal. March 3, 2014) (concluding that HOLA preemption applies to claims against non-federal savings bank successors only where wrongful conduct alleged occurred "before the loan changed hands from the federal savings association or bank to the entity not governed by HOLA," collecting cases).

A preemption analysis under HOLA first requires a court to determine whether the law at issue is identified in 12 C.F.R. § 560.2(b), which provides a nonexclusive list of the types of state laws preempted by HOLA. *See Silvas*, 514 F.3d at 1005. Among the laws specifically preempted by HOLA are those affecting "terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan;" "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;" and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 560.2(b)(4), (9) and (10).

If the state law at issue falls into one of the enumerated categories, then it is preempted by HOLA. *Silvas*, 514 F.3d at 1005. If it does not fall into one of the enumerated categories but affects lending, a presumption of preemption arises that is reversed only "if the law can clearly be shown to fit within the confines of paragraph (c) [of section 560.2]." *Id.* Section 560.2(c) excepts from preemption "[s]tate laws . . . that . . . only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)." 12 C.F.R. § 560.2(c).

Here, although it is not entirely clear, Plaintiff's loan origination-based fraud claim appears to be based on her allegations that Defendant's predecessor, World Savings Bank, failed to adequately disclose various loan terms and improperly placed her in an unaffordable loan due to lax underwriting standards. (Compl. ¶¶ 31-35, 57-64.) Her negligence claim is partially based on allegations that World Savings Bank allowed her to refinance her home loan without adequately disclosing the risks. (Compl. ¶¶ 32-35, 74, 78.) Similarly, Plaintiff's elder abuse claim is based on allegations that World Savings Bank originated the loan based on the property's equity, "as opposed to [Plaintiff's] ability to repay the loan." (Compl. ¶ 86.) These claims, which challenge alleged deficiencies in the origination process, affect disclosure and "processing, origination, servicing, sale or purchase" of a mortgage and are specifically preempted by HOLA. 12 C.F.R. § 560.2(b) (9) and (10). *See Sami v. Wells Fargo Bank*, No. C 12-00108 DMR, 2012 WL 967051, at *8 (N.D. Cal. March 21, 2012); *see also Tuck v. Wells Fargo Home Mortg.*, No. C-12-01796 DMR, 2012 WL 2906738, at *4-5 (N.D. Cal. July 13, 2012) (holding that claims based upon bank's approval of plaintiffs for loan modification they could not afford, including negligent misrepresentation and negligence, were preempted where claims would "impose a duty on lenders to borrowers in the lending process"). The extent to which Plaintiff's UCL claim is based on origination-based conduct is not clear, as she simply incorporates by reference each of the preceding allegations in her complaint. This claim is preempted by HOLA to the extent that her allegations relate to alleged deficiencies in the loan origination process, beyond any incidental effect on lending operations. *See* 12 C.F.R. § 560.2(c).

At the hearing, Plaintiff asserted that her fraud claim is also based on affirmative misrepresentations by World Savings Bank during the loan qualification process. Claims which arise from a more "general duty not to misrepresent material facts" may not be preempted. *See Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1186-87 (N.D. Cal. 2012) (holding that claim that bank "made fraudulent misrepresentations that Plaintiff qualified for a loan modification . . . that it would not accept any new payments until the trial modification began, and that no foreclosure sale would be conducted while the loan modification process was underway" was not preempted as claim "[did] not seek to impose additional requirements on Defendant" (citing *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-01390, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011))). Accordingly, Plaintiff's origination-based fraud claim is dismissed with leave to amend, as is any UCL claim based on the same underlying conduct.[5] The remaining origination-based claims are dismissed with prejudice.

**B.     Foreclosure-Based Claims**

    **1.     Fraud**

Plaintiff's foreclosure-based fraud claim is not clearly pled. The claim incorporates the general allegations by reference, but it appears that the claim may be based on an allegation that Defendant made a knowingly false promise of a loan modification but had no intention of granting a modification. According to Plaintiff, Defendant "has been at all times engaged in a shell game, promising modification, purposely defecting [sic] loan modification documents, while moving intently and purposefully toward foreclosure" of Plaintiff's home. (Compl. ¶¶ 52, 61-62.)

To state a claim for fraud, Plaintiff must allege (1) misrepresentation; (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).

The court finds that Plaintiffs' fraud allegations do not satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). In order to recover under fraud based claims, a

---

[5] The court also notes that any origination-based fraud claim must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b), and must adequately plead actual reliance and damages, as discussed below.

"party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must include "the who, what, when, where, and how" of the misconduct charged). Vague or conclusory allegations are insufficient to satisfy Rule 9(b)'s particularity requirement. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). To comply with Rule 9(b), fraud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. *Bly-McGee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001). Here, Plaintiff's fraud claim is not pleaded with the requisite particularity. She does not identify the allegedly false statements and fails to describe when the alleged statements were made. She also fails to identify who made any alleged misrepresentations or such individuals' authority to speak.

Plaintiff has also failed to allege specific facts supporting her reliance on Defendant's misrepresentation. She alleges "Defendants intended that Plaintiff relies [sic] on these material misrepresentations and material non-disclosures, and she did, in fact, so relies [sic]." (Compl. ¶ 69.) This conclusory allegation of reliance is insufficient; Plaintiff "must allege the specifics of . . . her reliance on the misrepresentation[s] to show a bona fide claim of actual reliance." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004). "Actual reliance occurs when the defendant's misrepresentation is an immediate cause of the plaintiff's conduct, altering [her] legal relations, and when, absent such representation, the plaintiff would not, in all reasonable probability, have entered into the transaction." *Id*.

Finally, Plaintiff alleges that she "is entitled to actual damages including, but not limited to, loss of money and property including but not limited to losses though overcharges and unlawfully unfavorable loan terms," attorneys' fees and costs "to save her Property," and damages for emotional distress, loss of reputation and goodwill, and "destruction of credit." (Compl. ¶ 70.) It is not clear what damages Plaintiff claims to have suffered as a result of Defendant's conduct related to

9

the loan modification process. California law does not impose any duty on lenders to agree to a loan modification. *See Lawrence v. Wells Fargo Bank, N.A.*, No. C 14-1272 PJH, 2014 WL 2705425, at *8 (N.D. Cal. June 13, 2014) (citing *Hamilton v. Greenwich Investors UUVI, LLC*, 195 Cal. App. 4th 1602, 1617 (2011)). Accordingly, the claim must be dismissed on this basis as well.

Plaintiff's fraud claim is dismissed with leave to amend to plead specific allegations regarding Defendant's alleged misrepresentations, as well as facts supporting reliance and damages.

### 2. Negligence

As with the fraud claim, Plaintiff's negligence cause of action incorporates the general allegations by reference, which makes it unclear which exact allegations support this cause of action. It appears that Plaintiff alleges that Defendant's negligent conduct includes making "intentional misrepresentations, deceit, and/or concealment of material facts known to them," although Plaintiff does not clearly identify the misrepresentations or facts concealed by Defendant. (Compl. ¶ 82.) In her opposition brief, Plaintiff states that she submitted a loan modification request and the application was denied, but that she never received a denial letter. (*See* Compl. ¶¶ 44-47.) Instead, Defendant told her representative that she could "appeal or move." (Compl. ¶ 45.) Defendant also recorded the notice of sale before Plaintiff saw the denial letter and had an opportunity to appeal it, failed to contact her within 30 days of recording the notice of default, and proceeded with the foreclosure even though it was simultaneously engaged in evaluating Plaintiff for a loan modification ("dual-tracking"). (Compl. ¶¶ 51-53.)

Under California law, "[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008)).

As with Plaintiff's fraud claim, the basis for this claim to the extent that it is based on the loan modification/foreclosure process is unclear given that Plaintiff's loan is now current. Plaintiff alleges that Defendant owed Plaintiff a general duty to comply with various California Civil Code

10

1  provisions governing foreclosure proceedings, including requirements that a beneficiary contact a
2  borrower at least 30 days before recording a notice of default in order to explore the borrower's
3  options to avoid foreclosure, as well as the prohibition on the practice of dual tracking. *See* Cal.
4  Civ. Code §§ 2923.5, 2923.6. However, as discussed further below, Plaintiff concedes that her
5  claims that Defendant violated non-judicial foreclosure requirements are moot as the loan is now
6  current.

7  As currently pled, Plaintiff has not alleged facts that support a duty of care. As a general
8  rule, under California law, "a financial institution owes no duty of care to a borrower when the
9  institution's involvement in the loan transaction does not exceed the scope of its conventional role as
10 a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal.App.3d 1089, 1095-96
11 (1991) (citations omitted). An exception to this rule arises "when the lender 'actively participates in
12 the financed enterprise beyond the domain of the usual money lender.'" *Sipe v. Countrywide Bank*,
13 690 F. Supp. 2d 1141, 1153 (E.D. Cal. 2010) (quoting *Wagner v. Benson*, 101 Cal. App. 3d 27, 35
14 (1980) (internal quotation marks omitted). "Numerous cases have characterized a loan modification
15 as a traditional money lending activity" and concluded that a financial institution owes no duty of
16 care to a borrower in the loan modification process. *Settle v. World Sav. Bank, F.S.B.*, No. ED CV
17 11-00800 MMM, 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (dismissing negligent
18 misrepresentation claim where plaintiff failed to plead any facts indicating that "defendant went
19 beyond the typical role of a money lender"); *see also Armstrong v. Chevy Chase Bank, FSB*, No.
20 4:11-cv-05664 EJD, 2012 WL 4747165, *4-5 (N.D. Cal. Oct. 3, 2012) (dismissing negligence claim
21 based upon loan modification process where plaintiff had not alleged plausible theory of negligence;
22 noting that renegotiation "is one of the key functions of a money lender"); *Morgan v. U.S. Bank*
23 *Nat'l Ass'n*, No. C 12-03827 CRB, 2013 WL 684932, at *3 (N.D. Cal. Feb. 25, 2013) (same).

24 Plaintiff cites a recent California case, *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal.
25 App. 4th 49, 68 (2013), to argue that "a lender does owe a duty to a borrower to not make material
26 misrepresentations about the status of an application for a loan modification or about the date, time,
27 or status of a foreclosure sale," because "[t]he law imposes a duty not to make negligent
28 misrepresentations of fact." However, absent a misrepresentation, a lender's actions do not give rise

11

to a negligence claim because a lender does not have a "duty of care to handle [the borrower's] loan in such a way to prevent foreclosure and forfeiture of [the] property." *Id*. (quotation marks omitted). Here, Plaintiff makes the conclusory allegation that Defendant stepped beyond ordinary lender and loan servicing rules and assumed a duty to Plaintiff by promising to modify her loan, (*see* Compl. ¶ 78), but she does not plead any facts that Defendant made "material misrepresentations" about her loan modification application. In fact, Plaintiff alleges that her modification application was evaluated and ultimately denied, and that Defendant sent her a letter informing her of the denial and stated that "normal collections would resume." (Compl. ¶¶ 45-48.) The court finds that Plaintiff has not alleged special circumstances sufficient to create a duty owed by Defendant with respect to Plaintiff's attempt to obtain a loan modification. *See Maomanivong v. Nat'l City Mortg. Co.*, No. C-13-05433 DMR, 2014 WL 4623873, at *16 (N.D. Cal. Sept. 15, 2014) (declining to find a duty existed where "Plaintiff required a loan modification because she had defaulted on her loan, the loan modification had not progressed to a concrete stage, and there was no indication of the likelihood that her loan modification would have been granted.")

Additionally, Plaintiff has not adequately alleged that she suffered damages as a result of any negligence on Defendant's part, as discussed above. Accordingly, this claim is dismissed with leave to amend to plead additional allegations that establish a duty of care as well as damages.

### 3. Elder Abuse

Plaintiff's third cause of action is for financial elder abuse pursuant to California Welfare and Institutions Code section 15610.30(a). That provision states:

> (a) "Financial abuse" of an elder or dependent adult occurs when a person or entity does any of the following:
>
> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70.

Cal. Welf. & Inst. Code § 15610.30(a). "[A] person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property

right, including by means of an agreement." Cal. Welf. & Inst. Code § 15610.30(c). "'Elder' means any person residing in [California], 65 years of age or older." Cal. Welf. & Inst. Code § 15610.27.

Plaintiff alleges that because she was over 65 years old at the time the "loan modification agreement was extended and accepted," she is afforded special protections under California law. (Compl. ¶ 84.) She argues that Defendant promised Plaintiff a modification, which, if true, would have led to Plaintiff retaining the property. Therefore, according to Plaintiff, the "promise was thus the equivalent of property to Plaintiff, and Defendant took it away." (Pl.'s Opp'n 13.) However, Plaintiff does not clearly allege that Defendant promised her a loan modification. Moreover, Plaintiff cites no authority supporting her position that a promise of a modification is the equivalent of real or personal property for purposes of an elder abuse claim. Plaintiff's elder abuse claim is dismissed with leave to amend.

### 4. Civil Code section 2923.5 & Homeowners' Bill of Rights Claims

Plaintiff's fourth cause of action is labeled as a violation of California Civil Code section 2924, *et seq*. This claim is based on the allegation that Defendant violated Civil Code section 2923.5 by recording a notice of default without attempting to contact Plaintiff to discuss her delinquency and explore possible alternatives to foreclosure. (*See* Compl. ¶¶ 95-101; Pl.'s Opp'n 13-15.) In her fifth cause of action Plaintiff alleges that Defendant violated provisions of California's Homeowners' Bill of Rights ("HBOR"), California Civil Code sections 2923.6, 2924.9, and 2924.11, by engaging in prohibited dual-tracking. (Compl. ¶¶ 41-51, 109, 110.) Dual tracking is the initiation of foreclosure proceedings while simultaneously considering a borrower's eligibility for a loan modification.

Plaintiff seeks relief for these claims in the form of an order setting aside the allegedly defective notice of default, declaring the foreclosure proceeding unlawful, injunctive relief, and damages. (Compl. ¶¶ 105, 111, 112.) At the hearing, Plaintiff conceded that because her loan is now current and she is no longer in foreclosure proceedings, these claims are moot. Accordingly, Plaintiff's fourth and fifth causes of action are dismissed with prejudice.

### 5. UCL

13

Plaintiff's final cause of action seeks relief for Defendant's alleged violations of California Business & Professions Code section 17200 *et seq.*, alleging that Defendant's actions are unlawful, unfair, and fraudulent. (*See* Compl. ¶¶ 115-118.) To allege a viable UCL claim, Plaintiff must meet the elements required to establish that claim. Under Section 17200, unfair competition is defined as "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof. Code § 17200. A business practice is "unlawful" under section 17200 if it violates an underlying state or federal statute or common law. *See Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). An act is "unfair" if the act "threatens an incipient violation of a [competition law], or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." *Id.* at 187. To the extent the claims sound in fraud, they are subject to the heightened pleading standards of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Additionally, "[a] plaintiff alleging unfair business practices under the unfair competition statutes 'must state with reasonable particularity the facts supporting the statutory elements of the violation.'" *Silicon Knights, Inc. v. Crystal Dynamics, Inc*., 983 F. Supp. 1303, 1316 (N.D. Cal. 1997) (quoting *Khoury v. Maly's of California*, 14 Cal. App. 4th 612, 619 (1993)).

Here, Plaintiff has failed to state "with reasonable particularity" the facts supporting this claim. Plaintiff simply lists a number of general allegations about Defendant's activities with respect to the foreclosure of Plaintiff's mortgage loan. (Compl. ¶ 116.) Yet Plaintiff has not stated facts supporting an actual or incipient violation of any underlying statutes to support a UCL claim, as discussed above, nor has she adequately pleaded any other predicate causes of action. Accordingly, as Plaintiff's substantive causes of action fail, her UCL claim based upon those causes of action fail as well. The UCL claim is dismissed with leave to amend.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's complaint is dismissed with leave to amend to address the specific deficiencies identified in this order. Her Civil Code section 2923.5 and HBOR causes of action are dismissed with prejudice.

Plaintiff shall file any amended complaint within 14 days of the date of this order. Plaintiff shall plead her best case.

IT IS SO ORDERED.

Dated: December 15, 2014



DONNA M. RYU
United States Magistrate Judge